808 So.2d 664 (2001)
STATE of Louisiana
v.
Charles James MITCHELL, III
No. 1999 KA 0283.
Court of Appeal of Louisiana, First Circuit.
June 22, 2001.
*666 Bernard E. Boudreaux, Jr., District Attorney, Franklin, By James R. McClelland, Thomas C. Senette, Assistant District Attorneys, for Appellee, State of Louisiana.
Dmitrc I. Burnes, Alexandria, for Defendant/Appellant, Charles James Mitchell, III.
Before: CARTER, C.J., PETTIGREW, and DOWNING, JJ.
CARTER, C.J.
Defendant, Charles James Mitchell, III, was charged by bill of information with two counts of attempted first-degree murder, violations of Louisiana Revised Statutes 14:27 and 14:30. Following a jury trial, he was found guilty of one count of attempted first-degree murder,[1] and sentenced to twenty years at hard labor, without benefit of probation, parole, or suspension of sentence. LSA-R.S. 14:27 D(1) and 14:30 C. Defendant appealed, raising eleven assignments of error. This court reversed defendant's conviction in a published decision entitled State v. Mitchell, 99-0283 (La.App. 1st Cir 11/5/99), 745 So.2d 208, on the basis of insufficient evidence of the requisite element of specific intent to kill, which defendant had specifically argued in assignment of error number six.[2] In State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, the Louisiana Supreme Court reversed this court's decision and remanded the case so we could address defendant's remaining assignments of error.

FACTS
The facts surrounding defendant's conviction are set forth in this court's opinion referred to above.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, defendant contends that the trial court erred in denying his Motion for Re-Allotment to Section B or in the Alternative, Random Allotment.
Defendant first contends that his case should have been allotted to Section B of the 16th Judicial District Court because that is the section in which his separately charged co-defendant pled guilty. The testimony at the motion for re-allotment indicated that there is no policy for such action and that, as often as not, co-defendants' *667 cases are heard by separate judges. Defendant cites no authority for the proposition that his case should have been re-allotted to Section B, and we are unable to find any.
Defendant contends, in the alternative, that the trial court should have granted his motion for random allotment because, at the time his case was allotted to a particular trial judge, the method of criminal case allotment in the 16th Judicial District did not comply with jurisprudence holding that the case assignments to judges be random and not selected by the district attorney.
In State v. Simpson, 551 So.2d 1303, 1304 (La.1989) (per curiam), the Louisiana Supreme Court held that the 15th Judicial District Court criminal case allotment system, which allowed the state to choose the judge who would preside over a criminal case, violated due process.
In the instant case, evidence was presented at the hearing on the motion for random allotment regarding the method of criminal case allocation used in the 16th Judicial District. The record shows that under the procedure used at the time defendant was arraigned, the state would select a trial date and make a motion to set trial for that date. If no objections were made, the trial would be set for that date. Trial dates were set according to a calendar that was prepared over a year in advance designating which division of court would preside on a particular potential trial date. The trial court indicated that in its judgment, the district attorney did not control the method of criminal case allocation. The court said that the state merely made a motion to set the date, which the court, in its discretion, could deny. The court further indicated that defendants, by asking for continuances, or filing motions, could alter the trial date initially selected by the district attorney. In State v. Gomez, 573 So.2d 521, 523 (La.App. 1st Cir. 1990) (per curiam), this court found that a similar system in the 18th Judicial District violated due process. See also State v. Payne, 556 So.2d 47, 48 (La.1990) (summarily granting writ, finding rules of 21st Judicial District not in compliance with Simpson).
In its ruling on defendant's motion in the instant case, the trial court made clear that it thought the Simpson decision was in error and should be overruled. The court indicated that defendant's motion for compliance with that case impugned the integrity of the district attorney and the court. The court denied defendant's motion, which was filed one month before trial, as untimely under Louisiana Code of Criminal procedure article 521. The court further found that no such motion was contemplated by the Code of Criminal Procedure. However, the court allowed defendant to present evidence on the motion in the form of a proffer. After hearing the proffered evidence, the court indicated that it believed that the system used by the 16th JDC did not violate the dictates of Simpson. Although the trial court initially denied the motion as untimely, it went on to address the merits of defendant's claim. In light of this fact, we will review defendant's claim that the system of allotment in the 16th Judicial District violated due process.
The record reflects that the system of allotment, as it existed at the time defendant's case was set for trial,[3] allowed the district attorney to select a trial date before a particular judge. Barring some action by defendant, the motion would generally be granted by the court. Thus the system of allotment of criminal cases in *668 the 16th Judicial District failed to comply with Simpson and violated due process.
Having found that the case allotment system violated due process, we must now determine whether this violation warrants a reversal of defendant's conviction. We note that defendant has not, either at trial or in his brief before this Court, argued that prejudice occurred as a result of the allotment of this case. Nor does the record reveal any actual prejudice to defendant. The assignment of trial under a system that violates due process is subject to a harmless error analysis. See State v. Claxton, 603 So.2d 247, 249-50 (La.App. 1st Cir.1992). See also State v. Jones, 600 So.2d 875, 879 (La.App. 1st Cir.1992), writ denied, 92-2351 (La.5/12/95), 654 So.2d 346. For the reasons that follow, we conclude that the assignment of defendant's trial under this unconstitutional allotment system is at most harmless error.
The basic purpose of a random allotment system is to ensure that the accused is tried before an impartial judge. Defendant makes no allegations that the trial judge to whom the case was allotted was biased in any manner. In fact, at the hearing on the Motion for Random Allotment, counsel for defendant stated on the record that defendant had no objection to his case being heard by that particular trial judge. Considering the foregoing, we find no prejudice accrued to the defendant due to the error in the allotment system and, thus, find the error was harmless. Therefore, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
In his third assignment of error, defendant contends that the trial court erred in denying his motion to recuse all of the judges of the 16th Judicial District from hearing his Motion for Re-allotment. He claims that because those judges adopted the Rules of the 16th Judicial District Court that were challenged in his motion, they should not have been allowed to decide whether those rules complied with the Louisiana Supreme Court's ruling in Simpson. At the hearing on his motion to recuse, defendant argued that the judges had a "conflict of interest" and should therefore be precluded from ruling on the issue. Defendant cites no authority for such a proposition, nor are we able to find any.
In denying defendant's motion, the trial court correctly pointed out that such decisions are the function of judges in the everyday performance of their duties. The court went on to say:
Unless you have some evidence to show that this Court is unable to perform that function, then I'm going to deny the motion. In fact, no evidence was presented in support of it. No brief in support of it. No case in support of the argument and logically the argument makes no sense to the Court.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 3
In this assignment of error, defendant contends that statements made by the prosecutor in both his opening statement and closing arguments violated defendant's Fifth Amendment right to remain silent.
In his opening statement the prosecutor referred to defendant's initial statement to the police with the following remarks:
Mr. Mitchell of course was questioned in this matter, given an opportunity to tell his side of the story and he admitted being with everybody but he said he didn't know a thing about any shooting, he hadn't anything to do with, he didn't know a thing about any guns.
*669 Defense counsel objected only to the state's reference to defendant's statement. The trial court overruled defendant's objection.
Louisiana Code of Criminal Procedure article 767 states:
The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant unless the statement has been previously ruled admissible in the case.
In the instant case, defendant filed a motion to suppress the statement, which was denied by the trial court. The statement had therefore been ruled admissible, and the state's reference to it in opening statement was proper.
Defendant further asserts that the state again made an impermissible reference to his right to remain silent in closing argument. Specifically, the prosecutor again referred to defendant's statement to the police and said that during that statement, defendant "was given every chance in the world to explain and did not." However, defendant failed to make an objection to this statement at trial. Louisiana Code of Criminal Procedure article 841 A provides, in pertinent part: "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Because defendant failed to object at the time that the statement was made, he is precluded from raising the issue on appeal.
Defendant also argues with regard to both of the prosecutor's remarks that they constitute violations of his Fifth Amendment right to silence. Because this ground was never articulated to the trial court, it represents a new ground for objection not properly before this court that cannot be raised for the first time on appeal. See LSA-C.Cr.P. art. 841; State v. Brown, 481 So.2d 679, 686-87 (La.App. 1st Cir.1985), writ denied, 486 So.2d 747 (La.1986). Therefore, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 4
In his fourth assignment of error, defendant contends that the trial court erred in denying his objection to the state's use of peremptory challenges against four potential black jurors. He argues that the state exercised its challenges in a racially discriminatory fashion that violated Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Defendant contends that the allegedly race-neutral explanations offered by the state for challenging certain jurors are not supported by the record.
In Batson, the Supreme Court outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause. The analysis set forth in Batson permits prompt rulings on objections to peremptory challenges without substantial disruption of the jury selection process. Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 1865-66, 114 L.Ed.2d 395 (1991).
First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.
Hernandez, 500 U.S. at 358-59, 111 S.Ct. at 1865-1866 (citations omitted).
The second step of this process does not demand an explanation that is *670 persuasive, or even plausible. At the second step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). Because a trial judge's findings pertaining to purposeful discrimination turn largely on credibility evaluations, such findings ordinarily should be entitled to great deference by a reviewing court. Batson v. Kentucky, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. Reasons offered to explain the exercise of peremptory challenges should be deemed race-neutral unless a discriminatory intent was inherent in those reasons. See Hernandez v. New York, 500 U.S. at 360, 111 S.Ct. at 1866.
Herein, the defendant first entered a Batson challenge at the conclusion of voir dire examination of the first panel of prospective jurors. This initial objection was prompted by the state's peremptory challenge of prospective juror Brenda Foster. Arguably, defendant had not made out a prima facie case of racial discrimination at this point, as that state had accepted one of the two prospective African-American jurors on the panel and challenged the other. However, the court asked the state to provide a race-neutral explanation for the challenge. The state indicated that Foster was a cafeteria worker from Franklin, Louisiana, and that, although she failed to acknowledge it when asked, the prosecutor strongly suspected that she knew defendant. The court indicated that it accepted the state's explanation and denied defendant's challenge. Defendant's next Batson challenge came after the state struck prospective jurors Sarah Owen Diggs and Melissa Grogan. The court again asked the state to indicate the race-neutral explanation for the challenges. As to Ms. Diggs, the state noted that her husband was convicted of second-degree murder in the same court where defendant was being tried and that she did not believe her husband was guilty. Further, she knew of the crime and knew some of the witnesses who would testify.
As to Ms. Grogan, the prosecutor indicated that she had heard of the crime, knew many of the witnesses, and her nephew had been convicted of distribution of cocaine. The trial court denied defendant's motion. Finally, the state struck a fourth prospective juror, Gail Andrus, and defendant objected pursuant to Batson. The prosecutor explained that the juror had indicated to the court that she had difficulty making decisions. Defendant correctly points out that this exchange is not indicated in the record before us. However, the prosecutor also expressed concern because the juror affirmed rather than swore when she took the oath. Based on this fact, he felt she might have some religious convictions that would make it difficult for her to serve on a jury. The court accepted the prosecutor's reasons and denied defendant's motion.
The record in the instant case shows that as to each challenge to which defendant objects, the state was able to offer a race-neutral reason for the challenge that was accepted by the trial court. The record also shows that four of the twelve jurors seated in the case were African-American.
The trial court was satisfied with the state's explanations, and nothing in the record indicates those decisions were clearly erroneous. Therefore, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 5
In this assignment of error, defendant contends that the trial court erred in denying his motion for mistrial. He complains *671 that the trial court misstated the law with respect to the an element of attempted first-degree murder. Specifically, the trial court read the portion of Louisiana Revised Statute 14:30 that indicates a defendant may be guilty of the crime of murder if at the time of the killing the perpetrator acts with specific intent to inflict great bodily injury upon the victim.
After the jury was sworn, but prior to beginning evidence, defendant asked for a mistrial as a result of the court's misstatement of the law. Defendant based his motion on Louisiana Code of Criminal Procedure article 775, which provides in pertinent part:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
. . . .
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
Although counsel is correct in his assertion that the definition read to the jury during voir dire was incorrect, such error does not automatically warrant a mistrial under the provision cited. Further, the jury was ultimately given the proper definition of the crime in the court's final instruction to the jury. In addition, the Louisiana Supreme Court held, in State v. Hongo, 96-2060, pp. 4-5 (La.12/2/97), 706 So.2d 419, 421-22, that even when the final jury instructions contain the misstatement of law complained of here, the error is harmless when the record shows that there was sufficient evidence from which a jury could conclude that the defendant had the requisite specific intent. Insomuch as the supreme court has clearly decided that the record in the instant case is sufficient in that regard, the error complained of here is surely harmless beyond a reasonable doubt. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 8
In this assignment of error, defendant contends that the evidence was insufficient to support the element of a drive-by shooting that requires that the shooting take place from a public highway or street.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in article 821 is an objective standard for testing overall evidence, both direct and circumstantial, for reasonable doubt.
When analyzing circumstantial evidence, Louisiana Revised Statute 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La. 1988). However, when a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La.App. 1st Cir.), writ denied, 514 So.2d 126 (La.1987).
In the instant case, the state presented a number of witnesses who testified that when the white car in which defendant was *672 a passenger exited the parking lot, shots were fired from it. Wayne Turner, who was on his way to Church's to get some food, testified that he was on Fifth Street when the car backed out in front of him on the highway. He said that it was at that point that shots were fired from the car. Lavergne Hayes, a cook at Church's, said that she saw the white car and heard the shots as the car was driving off. Craig Lavine, Jr., a friend of one of the victims, said that the shots were fired from the white car when everyone got in their cars and left the parking lot.
When viewed in the light most favorable to the state, this evidence establishes that the gunshots were fired as the car exited the parking lot onto the adjacent street. This assignment is without merit.

ASSIGNMENTS OF ERROR NOS. 9 AND 10
In these assignments of error, defendant contends that the trial court erred in failing to give a jury charge regarding the mandatory minimum sentence for attempted first-degree murder, i.e. ten years at hard labor without benefit of probation, parole, or suspension of sentence. He further complains that the trial court erred in not allowing him to argue the mandatory-minimum sentence requirements of the statute in closing argument.
Defendant was not entitled to an instruction on the mandatory-minimum penalty, nor was he entitled to argue the penalty to the jury. State v. Nuccio, 454 So.2d 93, 105 (La.1984). These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 11
In this assignment of error, defendant asserts that the trial court erred in imposing a constitutionally excessive sentence. Although a sentence falls within the statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has great discretion in imposing a sentence within the statutory limits, and such sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La.App. 1st Cir.1990).
In the instant case, the defendant was exposed to a minimum penalty of ten years and a maximum penalty of fifty years at hard labor. See LSA-R.S. 14:27 D(1) & 14:30 C. The sentence he received was less than one-half the maximum.
Code of Criminal Procedure article 894.1 sets forth the items that must be considered by the trial court in imposing sentence. The trial court need not recite the entire checklist of article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Davis, 448 So.2d 645, 653 (La.1984). In light of the criteria expressed by article 894.1, a review of the individual excessiveness must consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Lewis, 489 So.2d 1055, 1061 (La. App. 1st Cir.) writ denied, 493 So.2d 1218 (La.1986).
In sentencing defendant, the trial court meticulously went through the applicable factors that it considered in fashioning defendant's sentence. Among the applicable factors the trial court considered was the severe and permanent physical and psychological harm to the victims of the offense. The trial court went on to express concern about defendant's criminal history, including his implication in a similar driveby shooting only weeks before the offense for which he was convicted, as well as an arrest for carnal knowledge of a juvenile in which the victim may have been as young as thirteen when defendant began having a *673 sexual relationship with her. The court indicated that it was aware of defendant's youthful age of nineteen, but that factor did not outweigh the seriousness of the crime for which defendant was convicted and the harm done to society by such conduct.
The trial court considered defendant's background and the other appropriate considerations outlined in article 894.1, and the sentence is supported by the record. There was no abuse of discretion by the trial court, and defendant's sentence is not unconstitutionally excessive. Therefore, this assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Through an oversight, the jury was presented with a verdict form as to only one count of attempted first-degree murder. The prosecutor specifically waived the second count of attempted first-degree murder.
[2] In assignment of error number seven, defendant argues that the trial court erred in denying his motion for postverdict judgment of acquittal based on insufficient evidence of specific intent. In light of the Louisiana Supreme Court's ruling regarding assignment of error number six, the issue complained of in assignment of error number seven is moot.
[3] The Rules of the 16th Judicial District Court were subsequently amended to allow for random allotment of criminal cases effective January 1, 1999.