855 So.2d 875 (2003)
STATE of Louisiana, Appellee,
v.
Ricky E. CHATMAN, Appellant.
No. 37,523-KA.
Court of Appeals of Louisiana, Second Circuit.
September 24, 2003.
*876 Kidd-Culpepper by Paul Henry Kidd, Monroe, for Appellant.
Jerry L. Jones, District Attorney, Charles L. Brumfield, Assistant District Attorney, for Appellee.
Before GASKINS, PEATROSS and TRAYLOR (Pro Tempore), JJ.
TRAYLOR, Judge Pro Tempore.
Following a bench trial, the defendant, Ricky Chatman ("Chatman"), was convicted for the rape of a ten-year-old girl and sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. Chatman now appeals, alleging six assignments of error. For the following reasons, we affirm.

Facts
The victim testified that Chatman, who was thirty-seven years of age at the time of the offense, offered her five dollars to help him. He then led the victim to an overgrown, deserted area at the end of a street. Once isolated, he forced her to the ground, removed her blue jeans and pulled her panties down. He removed his own clothes and got on top of her. Although Chatman's penis did not enter the victim's vagina sufficiently to damage the hymen, the trial court concluded that there was sufficient penetration to constitute rape. The victim also reported that Chatman tried to make her perform oral sex on him, but she refused to open her mouth. He let the victim go, and she rode her bicycle to her aunt's home where she reported that Chatman had raped her. The victim's family contacted the police and Chatman was subsequently arrested and charged with rape.

*877 Discussion
After trial, Chatman moved for a post verdict judgment of acquittal claiming that there was no evidence of penetration, and, therefore, the evidence could only support a conviction for attempted rape. The trial court denied the motion, and Chatman now alleges the court erred in denying his motion for post verdict judgment of acquittal.
La.C.Cr.P. art. 821 provides that "[a] post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." Because this is a question of legal sufficiency, it should be reviewed first. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992); State v. Hearold, 603 So.2d 731 (La.1992).
To sustain a conviction for aggravated rape in this instance, the state was required to show that Chatman had vaginal, oral or anal intercourse with a child under the age of twelve. La. R.S. 14:42. Completion of the crime requires penetration, however, "... any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime." La. R.S. 14:41.
The victim's hymen was not damaged by the assault, and the medical testimony, as well as the victim's, indicated that Chatman's penis did not enter her vagina beyond the hymen. The victim testified that Chatman tried to insert his penis in her. He moved up and down on her but failed to fully insert his penis. She testified that he emitted "pee," and forensic tests showed the presence of sperm belonging to Chatman in the victim's panties and a prostate specific antigen ("PSA"), indicating the presence of male semen, was recovered from a vaginal swab. There was evidence of abrasions on the labia minora consistent with a rubbing motion, possibly caused by Chatman's penis.
Chatman's version of the event was that he got on top of the victim, but his penis only rubbed her legs. After a few minutes, he said that he got off of the victim, stood up and masturbated until ejaculation. He argues that the presence of his sperm in the victim's panties, but not found in the vaginal swab (which showed only the presence of a minute amount of PSA), supports his version of the crime. He contends the PSA came from the victim's underwear when she put her panties back on. Regarding the abrasions to the victim's labia minora, Chatman claims they could have been caused by the seat of her bicycle.
Taken as a whole, the victim's testimony that Chatman put his penis on her vagina was corroborated by all of the evidence. The location of the injury to her vagina, the forensic evidence showing the presence of sperm on her panties, and the PSA on her vagina supports the conclusion that Chatman's penis penetrated only the external aperture of the victim's genitalia and rubbed against the labia minora, but did not go beyond the hymen into the vaginal canal. Even this slight penetration, however, is sufficient to meet this element of the crime. State v. Prestridge, 399 So.2d 564 (La.1981); State v. Murphy, 34,624 (La.App.2d Cir.04/06/01), 785 So.2d 197, writ denied, XXXX-XXXX (La.03/22/02), 811 So.2d 920; State v. Lewis, 577 So.2d 799 (La.App. 2d Cir.1991), writ denied, 582 So.2d 1304; State v. Allen, Jr., 2002-593 (La.App. 3rd Cir.11/06/02), 830 So.2d 606. Viewing this evidence in a light most favorable to the prosecution reasonably permits a finding of guilty on the charge of aggravated rape. Therefore, this assignment is without merit.
*878 Turning to Chatman's other assignments of error, he claims that this case was not randomly allotted, and if it was, it was never formally reassigned to Judge Jones in Criminal Division Three.
The court minutes do not show any random allotment or assignment of Chatman's case to Criminal Division Three. The record also does not reflect any objection by Chatman to the assignment or manner of assignment of his case to Judge Jones' court.
The failure to object alone is fatal to this assigned error. La.C.Cr.P. art. 841. Nevertheless, assuming, for the sake of argument only, that the method of assignment of trial in this instance violated due process, Chatman must show some prejudice has resulted from the due process violation. The assignment of trial under a system that violates due process is subject to a harmless error analysis. State v. Mitchell, XXXX-XXXX (La.App. 1st Cir.06/22/01), 808 So.2d 664. (Citations omitted). No harm or prejudice has been shown or alleged in this instance. Accordingly, this assignment is without merit.
Next, Chatman argues that there was not an effective waiver of the right to a trial by jury. Louisiana C.Cr.P. art. 780 allows a defendant to "knowingly and intelligently" waive the right to trial by jury and elect to be tried by judge.
The transcript of the proceedings indicates that the trial court determined the extent of Chatman's formal education, which ended at the eighth grade, and satisfied itself that Chatman, who could neither read nor write, understood the English language well enough to understand what his attorney told him about the case. The court asked Chatman if he had discussed the case with his attorney and "the best way to handle it." Chatman said, "yes," and the court then asked:
And you have indicated that you want to waive jury and proceed with a bench trial alone, correct?
The transcript states that Chatman's response was "... inaudible ..."
The court then stated:
All right, I'm allowing you to do that as I indicated earlier. Now then, the court will proceed in the following way....
Our review of the transcript indicates that several of Chatman's responses and remarks were transcribed as "... inaudible...." However, none of the statements made by the court or the attorneys at the proceeding were "inaudible." This fact infers that Chatman did not speak loud enough to be recorded by the tape recorder so that his remarks could be transcribed.
On the other hand, the court apparently heard most of Chatman's responses, and when it did not, it made him repeat answers it did not hear.
The court minutes of the proceedings on that day reflect that Chatman was present with counsel, Mr. Carl Cooper. Those minutes read as follows:
The defense waived a jury trial and will be tried by judge. Defendant sworn and the court talked with him about his right to a jury trial. Defendant understood his rights. Stipulations entered into as to the chain of custody of evidence taken to the crime lab....
Read together, the transcript and court minutes indicate that there had been a prior discussion between counsel and the court regarding the decision to waive a jury trial, followed by an open court discussion between the court and Chatman regarding his right to trial by jury and the decision to waive that right. Although Chatman's specific response to the court's question asking him if he wanted to waive his right to trial by jury and proceed with *879 a bench trial could not be transcribed because it was "inaudible," the court obviously heard Chatman's response to be affirmative, as evidenced by its response to his inaudible response. The court minutes corroborate this reading of the transcript by stating that Chatman understood his right to trial by jury and waived it. Finally, we note that Chatman's attorney was present with him, had obviously assisted him in the decision to waive trial by jury, and had advised the court beforehand. A defendant's attorney can waive his right to a jury trial when the defendant is considered to have understood his right and consented to such a waiver. State v. Mandigo, 29,913 (La.App.2d Cir.10/31/97), 702 So.2d 351; State v. Tyler, 544 So.2d 495 (La.App. 2d Cir.1989).
We conclude that the presence of defense counsel, the minute entry, and the transcript reflect a knowing and intelligent waiver of the right to trial by jury by Chatman in open court and that the trial court did not err in making that determination. See State v. Pierre, 2002-2665 (La.3/28/03), 842 So.2d 321. Accordingly, this assignment of error is without merit.
Chatman next argues that the trial court should have recused itself once Chatman waived the right to trial by jury since it had earlier rejected a plea offer that had been made to him consisting of a fifteen-year sentence in exchange for a guilty plea. Chatman contends the trial judge's rejection of the plea demonstrated his bias against Chatman and his unsuitability to try the case. Chatman claims that the court's prejudice against him was further demonstrated by its comments against so-called "jury nullification" made after trial when it rendered its verdict.
Louisiana C.Cr.P. art. 671 provides, in pertinent part:
A. In a criminal case a judge of any court, trial or appellate, shall be recused when he:
(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
....
(6) Would be unable, for any other reason, to conduct a fair and impartial trial.
A trial judge is presumed to be impartial. State v. Edwards, 420 So.2d 663 (La.1982). In order to obtain a recusation based on bias, prejudice, and personal interest, the party seeking the recusation must establish more than conclusory allegations. State v. Boudreaux, 95-153 (La.App. 5th Cir.09/20/95), 662 So.2d 22, writ denied, 96-0840 (La.05/30/97), 694 So.2d 233. In this case, there is no support in the record for Chatman's claim that the trial judge had rejected his plea agreement or that the trial court had any bias against him. The court's remarks regarding jury nullification reflected its view that the verdict should fit the facts of the crime proven by the evidence. This assignment is, therefore, without merit.
At trial, the state elicited testimony from a former victim of Chatman who testified that he sexually molested her when she was six years old. She testified that Chatman entered her bedroom through a window and began to undress and fondle her, promising her money and gifts. He attempted to penetrate the young victim's vagina with a fork and with his penis. Chatman pled guilty to attempted indecent behavior with a juvenile for this crime and was sentenced to two and one-half years in prison.
Regarding this testimony, Chatman alleges that the trial court failed to hold a proper hearing pursuant to State v. Prieur, 277 So.2d 126 (La.1973) to enable the *880 state to introduce the other crimes evidence.
Louisiana C.E. art. 404(B) provides, in pertinent part:
Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The record shows that the state sent notice to Chatman on October 7, 2002 of its intent to introduce the evidence of this crime for the purposes allowed by the statute. The record also shows that the defense agreed to waive a Prieur hearing because it had received notice of what crimes the state planned to introduce, and, after discussion with the court, it agreed to a procedure whereby the court would allow the defense to raise objections or have a hearing during the course of trial when the evidence was proffered. In this instance, after the testimony was introduced, the court expressly gave the defense an opportunity to object to and argue the admissibility of the evidence, to which the defense responded, "No objection."
Thus, Chatman waived the Prieur hearing twice, first when counsel agreed to defer a hearing until the evidence was proffered, and second, when he was given the chance to object to the evidence and did not do so. Accordingly, even if it was error to admit the evidence, it cannot be availed of after a verdict has been rendered unless it was objected to at the time of occurrence. La.C.Cr.P. art. 841.
Finally, Chatman claims his counsel was ineffective in advising him to waive trial by jury. He argues that he would have been better served had his counsel advised him to take his chances before a jury rather than a judge, who had rejected a plea bargain of a fifteen-year sentence.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
To establish that his attorney was ineffective, Chatman first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed Chatman by the Sixth Amendment.
The relevant inquiry is whether Chatman's counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra; State v. Roland, 36,786 (La.App.2d Cir.06/05/03), 850 So.2d 738; State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991). The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions and trial strategy, strongly presuming he has exercised reasonable *881 professional judgment. Roland, supra; Moore, supra.
Second, Chatman must show that counsel's deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive Chatman of a fair trial, a trial whose result is reliable. Strickland, supra, at 2064. Chatman must prove actual prejudice before relief will be granted. It is not sufficient for him to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; Roland supra; State v. Pratt, 26,862 (La.App.2d Cir.04/05/95), 653 So.2d 174, writ denied, 95-1398 (La.11/03/95), 662 So.2d 9.
A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. Strickland, supra; State v. Jordan, 35,643 (La.App.2d Cir.04/03/02), 813 So.2d 1123, writ denied, XXXX-XXXX (La.05/30/03), 845 So.2d 1067.
In the present case, Chatman argues that his counsel should have advised him to "take his chances before a jury rather than a judge who had rejected a plea bargain of a 15-year sentence." The record shows that defense counsel's advice was based on a trial strategy raising the distinction between legal and actual sexual penetration and the complexity of the forensic evidence of the crime. Specifically, counsel obviously believed that perhaps the greater ability of a judge to understand and interpret the evidence regarding the presence of the sperm only in the victim's panties and its absence in the vaginal swab, which the defense argued supported its version of the event, could result in a favorable verdict. Simply stated, he thought he would fare better in front of a judge, instead of a jury.
We find no error constituting ineffective assistance of counsel in this strategy decision. Chatman has failed to show either an error or, if an error, any prejudice to his case. See Strickland, supra. This assignment is, therefore, without merit.

Conclusion
For the foregoing reasons, Chatman's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.