BROWN, Chief Judge.
| following a jury trial, defendant, Mark Anthony Wiggins, was convicted of second degree robbery, a violation of La. R.S. 14:64.4. Subsequently, he was adjudicated a third-felony offender and sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence. Defendant filed a post verdict judgment of acquittal, which was denied by the trial court. Defendant appealed, arguing that his conviction was based upon insufficient evidence. For the reasons set forth below, we affirm.

Facts

The following facts were introduced through testimony at trial. On Sunday, April 18, 2008, at approximately 12:28 p.m., Don and Sybil Veatch, an elderly couple, were on their way home from church and decided to stop at a Super 1 Foods store to purchase lunch. As they were walking from the parking area toward the store Mr. Veatch, who was a few steps ahead of his wife, heard her scream. Mr. Veatch observed his 81-year-old wife lying on the ground. A woman, later identified as Ashley Rena Smith, was on top of Mrs. Veatch with her knee in Mrs. Veatch’s chest. Smith took Mrs. Veatch’s purse. Mr. Veatch immediately grabbed the purse and struggled with Smith who eventually released her hold on the purse and fled.
Mrs. Veatch recalled walking toward the store and then feeling like she had hit a “concrete telephone pole” or had been hit by a car. Mrs. Veatch did not have any memory of what happened after being hit until she was sitting in her vehicle with ice on her head and was being treated by an |2EMT. According to her testimony and illustrated by photographs entered into evidence by the state, Mrs. Veatch suffered injuries to her face, eye, and leg. She noted, “I was completely swollen all on this side of my face for about six weeks.” Mrs. Veatch further stated that her knee was injured and “I still have water on my knee from this.”
Bob Cunningham arrived at Super 1 and observed the attack on Mrs. Veatch. Cunningham gave chase and tackled the perpetrator. At some point, the woman cried out, “Baby, help me. Help me,” and shortly thereafter, a man, later identified as defendant, began hitting Cunningham, causing him to release the woman. Once released, the woman and man ran to a vehicle and rapidly drove away. Witnesses on the scene were able to get the license plate number and description of the getaway vehicle.
After obtaining the information about the getaway vehicle, an officer drove around the surrounding area and located the vehicle nearby. A woman and a man were seen walking away from the vehicle and entering a nearby house. Soon thereafter, defendant left the house and was called over to a police unit where he was Mirandized and asked about the incident at Super 1. Defendant initially stated he didn’t really know what occurred, but that a man had attacked his girlfriend, Ashley Smith. Defendant and Smith were arrested and charged by bill of information with second degree robbery and possession of stolen things.[1] Codefendant Ashley Smith pled guilty to second degree robbery and testified at defendant’s trial.
| sAlthough Smith had given prior statements to police implicating defendant in the robbery as her “getaway driver,” at *1041 defendant’s trial, she testified that there was no planned robbery and that defendant did not know what she would do. Smith was asked and admitted to having made contradicting statements to the police officers who conducted the investigation.
Defendant testified, stating that he drove Smith to the Super 1 store and that he and their daughter stayed in the car while Smith went to get some items from the store. Defendant said that he was preoccupied with quieting his daughter when he heard Smith screaming his name and calling for help. Defendant stated that he saw a big man running after Smith and both falling to the ground. Defendant testified that he did not know the man was a good Samaritan, but only saw Smith being attacked so he went to her aid. Defendant secured the release of Smith, and the two fled the scene. Defendant repeatedly denied knowing anything about Smith’s intention to rob anyone. He further denied speeding away from the scene of the incident.
Defendant was found guilty of second degree robbery. Subsequently, the state filed a habitual offender bill of information, and defendant was adjudicated a third felony offender. Defendant was then sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence, whereupon he moved for judgment of acquittal, which was denied by the trial court. Defendant appealed.
| ¿Discussion
Both at trial and on appeal, defendant’s sole argument is that because no evidence was presented regarding his involvement in the planning of the robbery, his mere presence at the scene was insufficient to infer his participation as a principal.
La. R.S. 14:64.4 provides, in relevant part:
A. (1) Second degree robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another when the offender intentionally inflicts serious bodily injury.
(2)For purposes of this Section, “serious bodily injury” means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24
The appropriate standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
Further, the appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. Thus, a reviewing court accords great deference to a jury’s |5decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App. 2d Cir.02/25/09), 3 So.3d 685.
Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the proscribed criminal consequences to follow his act or failure to act, and may be inferred *1042 from the circumstances surrounding the offense and the conduct of defendant. La. R.S. 14:10(1). A jury may consider flight and attempts to avoid apprehension as evidence of a guilty conscience. State v. Fuller, 418 So.2d 591 (La.1982). The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of this determination is to be guided by the standards of Jackson v. Virginia, supra.
To convict defendant of second degree robbery, it was necessary for the state to prove: (1) the taking of (2) anything of value (3) belonging to another from the person of another or that is in the immediate control of another (4) when the offender intentionally inflicts serious bodily injury.
The testimony established that Ashley Smith attacked Mrs. Veatch in the Super 1 parking lot. Smith hit Mrs. Veatch, knocking her to the ground and grabbed her purse. As Mrs. Veatch hit the ground she injured her knee and was knocked unconscious. Smith repeatedly hit Mrs. Veatch about the face causing swelling and bruising. Mrs. Veatch testified that one side of her face remained swollen for about six weeks and at the time of the trial she still had “water” on her knee because of the injuries she sustained.
The uncontested testimony of Don Veatch was as follows:
... I just wanted to get the purse away from her (Ashley Smith), because I didn’t want her to take it.
|frAshley Smith’s testimony confirmed a taking of something of value from the person of Mrs. Veatch.
Q. And is that because you pled guilty to second degree robbery?
A. Yes, sir.
Q. And did that involve taking the purse from an 80-year-old woman?
A. Yes, sir.
Thus, the state presented sufficient evidence to establish a taking (even if only for a moment) of something of value, in the immediate control of another and the infliction of serious bodily injury.
Witnesses were able to get the license plate number of the vehicle that sped away from the scene with the assailants. The vehicle was quickly located and defendant questioned at that location. Defendant admitted that he had been on the scene waiting in the vehicle for Smith and had hit Mr. Cunningham who was holding Smith, securing her release, before driving away. Thus, the evidence presented at trial, including defendant’s own testimony, established that defendant participated in the robbery as a principal. He drove Smith to the scene, waited to drive her away from the crime, watched her back, and physically extracted her when the crime was interrupted. The jury weighed the credibility of defendant’s self-serving testimony against the obvious implications of the facts.
Ashley Smith’s testimony that the robbery was unplanned, that defendant had no knowledge of her intention, and that he was not the “getaway driver,” was impeached by her prior contradictory statements to the police.

17Conclusions

For the foregoing reasons, defendant’s conviction for second degr'ee robbery is affirmed.
MOORE, J., dissents with written reasons.

. The vehicle defendant was driving had been stolen the day before the robbery on April 12, 2008, from Grand Prairie, Texas. The second count was severed prior to trial, and defendant was only tried on the charge of second degree robbery. At trial, no evidence regarding the vehicle theft was presented to the jury.