PEATROSS, J.
 

 | defendants, Corey Holder and Jerrod Johnson, were each charged with three counts of armed robbery with a firearm. The two men were tried together and a jury convicted both Defendants as charged. The trial judge sentenced Johnson to serve 41 years’ imprisonment at hard labor on each count and imposed the sentences concurrently. The trial judge sentenced Holder, as a third-felony habitual offender, to serve life imprisonment at hard labor. Both Defendants now appeal. For the reasons stated herein, Defendants’ convictions are affirmed and their cases are remanded for the imposition of determinate sentences.
 

 FACTS
 

 Late on the night of May 7, 2004, a group of three or four men
 
 [1]
 
 robbed three
 
 *923
 
 employees at the Thrifty Liquor Store on Linwood Avenue in Shreveport. The robbers were dressed in black and wore masks and gloves. The victims identified the robbers as black males. Armed with a variety of firearms, the men forced the victims to the floor before taking several items of value from them and money from the cash registers. After taking the valuables, the men fled the store and got into a white Buick sedan.
 

 A passerby called police after seeing the armed men at the liquor store and two officers from the Shreveport Police Department (“SPD”), Keith Sharrah and Trey Robinson, responded immediately. The officers pursued the Buick and their patrol car dash camera captured footage of the chase. When the Buick reached the end of a dead-end street, the robbers stopped, exited the vehicle and fled on foot.
 

 |2Puring the pursuit on foot, the robbers discarded several masks, gloves and weapons. One of the robbers pointed an SKS rifle at the officers and both officers fired at the robbers. Additional SPD officers responded, including a K-9 unit, in an effort to apprehend the robbers. The police dog pursued and bit one of the fleeing robbers twice, but the robber was able to get away from the dog. One SPD officer, who was 6'2" tall, described the robber who was bitten as much larger than himself. Ultimately, all of the suspects escaped on foot. Police later found two blood-stained shirts along the path taken by the man who had been bitten. On searching the Buick, police found a bank bag from the liquor store, a walkie-talkie, duct tape and a ski mask.
 

 Subsequent investigation led the police to determine that Defendants were the suspects in this case. DNA testing matched Holder,
 
 [2]
 
 who is 6'6" tall, to the bloody shirts and matched Johnson
 
 [3]
 
 to a ski mask and a glove found along the path of the foot chase. In addition, Holder was found to have pronounced scars on his body at the places where the fleeing robber was bitten by the police dog. One SPD officer identified Holder as resembling the man bitten by the dog. Another officer, however, believed the person bitten by the dog was shorter and identified another man in a lineup. Further investigation led to a storage unit rented by Johnson and a search of this unit uncovered an instruction manual for the type of walkie-talkie that was found in the Buick.
 

 | :iThe State filed several amended bills of information against Defendants. Johnson was first charged on February 22, 2005, with armed robbery with a firearm of the Thrifty Liquor Store. Then on March 1, 2005, a second bill was filed charging Johnson and a third person, not a defendant in the instant trial, with armed robbery with a firearm of the Thrifty Liquor Store. A third bill, filed on March 14, 2005, charged Johnson, Holder and the third person with armed robbery with a firearm of the Thrifty Liquor Store. A fourth bill, filed on May 2, 2007, charged Johnson, Holder and the third person with armed robbery with a firearm of six individuals, not the store. The fifth and final bill, filed on June 18, 2007, charged Johnson, Holder and the third person with the armed rob
 
 *924
 
 bery with a firearm of three of the individuals named in the previous bill.
 

 Trial of this matter was originally set to commence on April 24, 2006. On April 17, 2006, the State moved to upset the trial and the trial date was reset for August 7, 2006. On July 27, 2006, the State forwarded a copy of the DNA evidence to Defendants and Johnson’s counsel received the evidence on July 31, 2006. The certified lab report included in this discovery was dated February 18, 2005, approximately 17 months earlier. Johnson moved for a continuance, but he did not request that the evidence be excluded.
 

 On August 2, 2006, the trial court granted Defendant’s motion for a continuance, resetting the trial until October 2006. Pri- or to that date, the State requested a continuance and the matter was continued until February 2007. The State then requested another continuance and trial was preset for March 2007. The trial was again continued to May 2007, the reasons for which are unclear from the record.
 

 In April 2007, Johnson’s counsel filed a motion to quash the bill of information charging him with the robbery, citing the allegedly untimely commencement of trial. In the meantime, as noted above, the State filed an amended bill on May 2, 2007. That day, the trial judge held a hearing on the motion to quash and the State informed the court that it had a substantial amount of documentary evidence that had not yet been provided. Defense counsel did not request another continuance and, instead, asked the court to continue the trial on its own motion. The trial court did so and reset the trial for June 5, 2007.
 

 Additionally, the trial court denied Johnson’s motion to quash, finding his previous request for a continuance to be a preliminary plea that suspended prescription. Johnson sought writs from this court which were subsequently denied on June 14, 2007. Trial was held on June 18, 2007, and a jury convicted Holder and Johnson as charged.
 

 As previously mentioned, the trial judge sentenced Johnson to serve 41 years’ imprisonment at hard labor on each count, with the sentences imposed concurrently. The trial judge sentenced Holder, as a third-felony offender, to serve a single term of life imprisonment, without the benefit of parole. Holder now appeals his conviction and Johnson appeals his conviction and sentence.
 

 \r,DISCUSSION
 

 Assignment of Error 5 (Johnson).
 
 The State failed to prove beyond a reasonable doubt Jerrod Johnson was present and participated in the armed robbery of the Thrifty Liquor Store located at 8420 Linwood Drive on May 7, 2004.
 

 Assignment of Error U (Holder).
 
 The evidence was insufficient to prove the elements of the crime of armed robbery as to Corey Holder.
 

 Both Defendants urge that the evidence was insufficient to convict them of the crime charged. Specifically, Defendants argue that the State failed to prove beyond a reasonable doubt their identity as the persons who robbed the victims at the liquor store.
 

 When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence since the accused may be entitled to an acquittal under
 
 Hudson v. Louisiana,
 
 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). The standard of appellate review for a sufficiency claim is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the
 
 *925
 
 essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Hearold,
 
 603 So.2d 731 (La.1992).
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence.
 
 Jackson, supra.
 
 An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution.
 
 Id.
 
 When the direct evidence is thus viewed, the facts disestablished by the direct evidence, and inferred from the circumstances established by that evidence, must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Parker,
 
 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497,
 
 writ denied,
 
 07-2053 (La.3/7/08), 977 So.2d 896.
 

 This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 05-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Robertson,
 
 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of the witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 07-1209 (La.12/14/07), 970 So.2d 529. In cases involving a defendant’s claim that he was not the person who committed the crime, the
 
 Jackson
 
 rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof.
 
 State v. Powell,
 
 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008,
 
 writ denied,
 
 96-1807 (La.2/21/97), 688 So.2d 520.
 

 In this case, the State provided a continuous link between the identity of the persons who robbed the employees of the liquor store and Defendants. Police responded to the robbery while it was still in progress |7and arrived just as the perpetrators were fleeing the scene. Police continuously pursued the suspects by vehicle until the suspects’ vehicle could continue no further. At that point, the pursuit on foot began. The robbers fled from their vehicle, shedding items of clothing and weapons. The items recovered from the ground after the chase matched the description of the robbers’ clothes and weapons as given by the victims and by the pursuing police officers.
 

 The police dog bit one of the fleeing robbers and that suspect’s torn and bloody clothing was found along the path of the chase. DNA from that clothing matched the DNA of Holder, who is 6'6" tall and was identified by one detective as being unusually large. DNA from a mask and a glove recovered along the chase path matched the DNA of Johnson. Accordingly, we find that the evidence was sufficient to prove the identities of Holder and Johnson as two of the perpetrators of the robbery.
 

 These assignments of error are without merit.
 

 Assignment of Error 1 (Johnson)
 
 The failure of the State to timely prosecute Mr. Johnson pursuant to LSA-C.Cr.P. 578, et seq., required a dismissal of the case against him.
 

 Johnson argues that the trial court erred in denying his motion to quash the prosecution of this case because of the State’s delay in bringing him to trial. He
 
 *926
 
 asserts that he was forced to obtain the continuance because the State delayed providing the DNA evidence that it had in its possession for over a year prior to trial. Johnson further contends that the trial was ultimately continued a second time because of the State’s failure to timely comply with its discovery obligation.
 

 |sLa. C. Cr. P. art. 578 provides in pertinent part:
 

 A. Except as otherwise provided in this Chapter, no trial shall be commenced ...
 

 (2) In other felony cases after two years from the date of institution of the prosecution ...
 

 La. C. Cr. P. art. 579 provides in pertinent part:
 

 A. The period of limitation established by Article 578 shall be interrupted if:
 

 (2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state ...
 

 La. C. Cr. P. art. 580 provides:
 

 When a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by article 578 shall be suspended until the ruling of the court thereon; but in no cause shall the state have less than one year after the ruling to commence the trial.
 

 Johnson argues that the State should not be allowed to enjoy the suspension of the limitation period provided in La. C. Cr. P. art. 579 because his preliminary plea was due to the State’s failure to timely supply the DNA testing results upon receiving them.
 

 When a defendant has brought an apparently meritorious motion to quash based upon prescription, the State bears a heavy burden to demonstrate that the time limitation period has been interrupted or that it has been suspended and, thus, has not yet expired.
 
 State v. Lathan,
 
 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890,
 
 writ denied,
 
 07-0805 (La.3/28/08), 978 So.2d 297. This court stated in
 
 Laihan:
 

 The purpose of Article 578 is to enforce a defendant’s right to a speedy trial and to prevent the oppression caused by | ^suspending criminal prosecutions over citizens for indefinite. periods of time. When a defendant files a preliminary plea, however, the two-year time period established by La. C. Cr. P. art. 579 is suspended. La. C. Cr. P. art. 580. A preliminary plea is any pleading or motion filed by the defense that delays trial, which includes motions to quash, motions to suppress, applications for discovery, bills of particulars and motions for continuances. The suspension lasts from the date the motion is filed until the date the trial court rules on the motion and that relevant time period is not counted towards the two-year time limitation. After the trial court rules on the motion, the State has either the remainder of the time limitations or a minimum period of one year from the date of ruling in which to commence trial, whichever time is longer. La. C. Cr. P. art. 580. (Internal citations omitted.)
 

 The State brought Johnson to trial within one year from the date of the ruling granting his motion for continuance. Johnson contends that the continuance should not be considered a preliminary plea because it was the State’s delay in providing discovery, rather than Johnson’s desire for the delay, which forced him to request the continuance. At the time he requested the continuance, Johnson did not move to exclude the evidence because it was arguably not timely provided. At
 
 *927
 
 the hearing on the motion to quash, Johnson’s counsel expressed his impression that the trial judge had informed the parties that no evidence would be excluded.
 

 Discovery rules are intended to eliminate unwarranted prejudice arising from surprise testimony, to permit the defense to meet the State’s case and to allow proper assessment of the strength of its evidence in preparing a defense.
 
 State v. Bartley,
 
 03-1382 (La.App. 5th Cir.3/30/04), 871 So.2d 563,
 
 writ denied,
 
 04-1055 (La.10/1/04), 883 So.2d 1006,
 
 citing State v. Harris,
 
 00-3459 (La.2/26/02), 812 So.2d 612. In the event of a discovery violation, the court may order the party to permit the discovery, |inmay grant a continuance, may order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed or may enter such other order, other than a dismissal, as may be appropriate. La. C. Cr. P. art. 729.5(A);
 
 Bartley, supra.
 

 In the case
 
 sub judice,
 
 the record does not reveal the reason for the State’s delay in providing Johnson with the DNA testing results. The State’s delay in providing this evidence was clearly a factor in Johnson’s request for a continuance; however, absent a motion to exclude the evidence, it does not appear that Johnson was prejudiced by the trial court’s disposition of the matter. Likewise, the State’s additional delays in providing discovery appeared to have been addressed by the State, which replaced the prosecutor who was responsible for the delay with a second prosecutor who immediately cooperated with the court and Johnson to ensure that discovery was timely completed. Further, it does not appear from the record that Johnson was prejudiced by these additional delays.
 

 Accordingly, we find this assignment of error to be without merit.
 

 Assignment of Error 2 (Johnson).
 
 This Honorable Court erred in reversing the ruling of the Trial Court as to the State’s discriminatory exercise of peremptory challenges.
 

 Assignment of Error 1 (Holder).
 
 The denial of the Defendant’s Batson Motion as to Prospective Jurors Shakira Davis, Dr. Frances Conley and Ariel Brown was error.
 

 During
 
 voir dire,
 
 the State exercised nine of its peremptory challenges to strike African-American jurors from the panel. Defendants timely objected to these challenges under
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), urging that the prosecutor had In challenged these jurors solely because of their race. The trial court found that Defendants had made a
 
 prima facie
 
 case of discrimination and required the prosecutor to provide race-neutral reasons for these challenges. The State provided reasons and the trial court accepted the State’s reasons as to six of the nine excused jurors and rejected the State’s reasons as to three of the jurors.
 

 The State sought supervisory writs from this court and this court reviewed the
 
 voir dire
 
 transcripts and reversed, holding that there had been no discriminatory pattern in the State’s use of peremptory challenges. Both Defendants seek reconsideration of that ruling on appeal. The State urges that this court should not revisit the issue because this court’s earlier decision is the law of the case.
 

 Typically, a court will not revisit an issue on appeal that has previously been decided on a writ application.
 
 State v. Hunter,
 
 39,664 (La.App.2d Cir.6/29/05), 907 So.2d 200,
 
 writ denied,
 
 05-2027 (La.3/10/06), 925 So.2d 507. In the instant case, on granting the State’s writ application, this court examined the record and
 
 *928
 
 the trial court’s reasons for its ruling and found that the trial court erred. This court then took peremptory action to reverse the trial court’s ruling. Nothing in the subsequent proceedings has changed any of the reasons underlying this court’s prior action, so there is nothing to reconsider as urged by Defendants.
 

 These assignments of error are without merit.
 

 |
 
 iaAssignment of EiTor 3 (Johnson).
 
 The Trial Court inappropriately denied challenges for cause as to four potential jurors. Mr. Johnson exhausted his peremptory challenges, thus was prejudiced by this error.
 

 Assignment of Error 2 (Holder).
 
 The Denial of the Defendant’s Challenges for Cause of Prospective Jurors Harper, Hernandez and Hale was error.
 

 Both Defendants urge that the trial court should have excused certain jurors for cause; and, since both Defendants exhausted their peremptory challenges, they argue on appeal that the trial court’s alleged error is reversible error.
 

 In
 
 State v. Blank,
 
 04-0204 (La.4/11/07), 955 So.2d 90,
 
 cert. denied, Blank v. Louisiana,
 
 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007), the supreme court explained:
 

 A trial court is vested with broad discretion in ruling on challenges for cause, and these rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. “A trial judge’s refusal to excuse a prospective juror for cause is not an abuse of his discretion notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, when subsequently, on further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and evidence.”
 
 State v. Robertson,
 
 [92-2660 (La.1/14/94), 630 So.2d 1278].
 

 Prejudice is presumed when a challenge for cause is denied erroneously by a trial court and the defendant exhausts his peremptory challenges. In Louisiana, a defendant must use one of his peremptory challenges curatively to remove the juror, thus reducing his remaining peremptory challenges, or waive any complaint on appeal. An erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights and constitutes reversible error. (Internal citations and footnote omitted.)
 

 Johnson complains that the trial court erred in denying his challenge to juror James Barnard whose father was very sick, on pain medicine and not taking food or water. Mr. Barnard was very concerned about his | isfather’s condition. Mr. Barnard was somewhat involved in looking after both of his parents, but he described his caregiving role as “not that significant.” He said that his father’s condition would, “for the most part,” not be a distraction to his jury service, but, if his father’s condition changed, he testified, “I don’t know.” Mr. Barnard also said, however, that he would be able to follow the law and could be fair to both sides. Consequently, the trial judge denied the challenge for cause, noting that Mr. Barnard did not say that he could not be a good juror.
 

 Our review of the record indicates that the trial judge’s decision was not an abuse of discretion. Mr. Barnard was in the midst of a serious life event, but did not express the opinion that he would be unable to serve as a juror. Further, his concerns about his ability to serve were focused on the uncertainty of his father’s health rather than an event which had already occurred.
 

 
 *929
 
 In addition, both Defendants argue that the trial court erred in failing to dismiss juror Ms. Marcia Harper. Ms. Harper is a retired Caddo Parish school teacher and her husband had been a Shreveport city judge. Two of her sons-in-law are in law enforcement and Ms. Harper initially said that she would be more likely to take the word of a police officer than that of another witness.
 

 After it was explained to Ms. Harper that she was to judge the credibility of police witnesses just like that of any other witness, she agreed several times that she could follow that instruction. In her response to a hypothetical, however, she stated that she would take the word of a police |14officer over that of a defendant. The trial court noted her response to the hypothetical, but was convinced, overall, that Ms. Harper could follow the law based on her statements that she could judge the witnesses’ credibility equally.
 

 Although Ms. Harper’s various answers were somewhat differing, considering the entire context of her
 
 voir dire,
 
 it appears that the trial court correctly concluded that she would be able to follow the law. A trial judge’s refusal to excuse a prospective juror for cause is not an abuse of his discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, when subsequently, on further inquiry or instruction, the potential juror demonstrated a willingness and ability to decide the case impartially according to the law and the evidence.
 
 State v. Taylor,
 
 03-1834, (La.5/25/04), 875 So.2d 58. Ms. Harper stated:
 

 I could do it [treat the witnesses equally] because their lives are in my hands, and if he [the judge] tells me to do that, that changes everything. Then I am really going for what is the truth and I could do it.
 

 The judge was persuaded by the juror’s explanation and we find that the court’s ruling was not an abuse of discretion.
 

 Both Defendants also challenged Ms. Geraldine Hernandez. Ms. Hernandez initially expressed some doubt about whether she could follow the law as it was given. She stated:
 

 What I’m stating is yes, I understand what the law is, I understand what the judge says; so, yes, that’s what I’ll do. But I always have something in the back of my mind maybe thinking differently than what I’m instructed to think.
 

 She further explained:
 

 | lsJust because I disagree with something doesn’t mean I can’t follow it. That’s a daily decision that we do, you know, in any instance sometimes so, yes.
 

 The court denied this challenge without further comment; but, given the juror’s explanation for her views, particularly, her explanation that she could put aside her personal opinions in favor of the law, we find no error in the trial court’s decision to deny the challenge.
 

 Finally, both Defendants challenged juror Robert Hale. Mr. Hale also had concerns about an ailing parent. His mother was 92 years old and in ill health. He explained that she was in the hospital, but was about to be moved to a nursing home where she would continue to have full-time care. Mr. Hale had no specific prognosis from a doctor stating that his mother was in imminent danger of death and specifically stated that his concerns about his mother would not interfere with his ability to serve as a juror. Considering Mr. Hale’s unequivocal statement that his mother’s condition would not interfere with his deliberations, we find no error on the part of the trial court in denying Defendants’ challenge for cause on that basis.
 

 
 *930
 
 These assignments of error are without merit.
 

 Assignment of Error k (Johnson).
 
 The dismissal of Ms. Singleton from the jury deprived Mr. Johnson of the jury he had chosen and caused him prejudiced (sic).
 

 Assignment of Error S (Holder).
 
 The Replacement of Juror Letitia Singleton was error.
 

 In these assignments of error, Defendants challenge another ruling which was previously rendered by this court. During the trial, a juror informed the trial judge that one of the other jurors, Ms. Singleton, had been discussing the case with other jurors and expressing opinions, both of which |1fiwere in violation of the trial judge’s orders. The tidal judge held a hearing where the jurors were questioned and concluded that Ms. Singleton should remain on the jury.
 

 The State, however, sought writs from this court and this court reversed, finding Ms. Singleton’s comments to be in violation of the rule prohibiting jurors from discussing the case prior to deliberation. This court ordered Ms. Singleton to be dismissed and replaced. Defendants sought writs from the Louisiana Supreme Court, which were denied. No. 2007-KK-1575.
 

 As previously discussed in Johnson’s assignment of error number two and Holder’s assignment of error number one, there is no reason for this court to reconsider its previous ruling made during the trial.
 
 State v. Hunter, supra.
 
 This court considered the matter fully, had complete knowledge of the facts and circumstances and decided the case based on an adequate record.
 
 Id.
 
 Nothing in the subsequent proceedings has changed the basis for this court’s ruling.
 
 Id.
 

 These assignments of error are, therefore, without merit.
 

 Assignment of Error 6 (Johnson).
 
 The sentences imposed of forty-one years at hard labor without benefit of parole, probation or suspension of sentence were unconstitutionally harsh and excessive and constitute cruel and unusual punishment considering the facts and circumstances of this case.
 

 Finally, Johnson argues that his 41-year concurrent hard labor sentences are excessive. As a threshold issue, however, we note that there is a question as to the specificity of Johnson’s sentences as imposed by the trial judge. Johnson was convicted of armed robbery with a firearm, but the 117trial judge only imposed a single term of 41 years for each offense without imposing a separate sentence for the use of a firearm.
 

 This court has previously held that a sentence for the offense of armed robbery with a firearm must consist of a term for the armed robbery offense and a separate consecutive term for the use of a firearm.
 
 State v. Eason,
 
 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685. Accordingly, we pretermit any discussion of Johnson’s assignment of error number six and remand the matter for imposition of determinate sentences in accordance with this court’s ruling in
 
 Eason, supra.
 

 We further recognize as error patent that Holder’s sentence also appears to be indeterminate. La. C. Cr. P. art. 920(2);
 
 State v. Paben,
 
 43,415 (La.App.2d Cir.8/13/08), 990 So.2d 123. Like Johnson, Holder was convicted of three counts of armed robbery with a firearm. The trial judge sentenced Holder to a single life sentence under the habitual offender law. It is unclear from the record whether the trial court considered the habitual offender bill to apply to all three of Holder’s convictions or only one. Regardless, the single
 
 *931
 
 sentence for Holder leaves two of his convictions without sentences.
 

 Additionally, we recognize as error patent that, as with Johnson, the trial judge failed to impose separate sentences for Holder for the firearm portion of the convictions. La. C. Cr. P. art. 920(2);
 
 Eason, supra; State v. Paben, supra.
 
 Accordingly, we also remand for the imposition of determinate sentences as to Holder and sentencing in accordance with this court’s ruling in
 
 Eason, supra.
 

 |
 
 ^CONCLUSION
 

 For the foregoing reasons, the convictions of Defendants, Corey Holder and Dewayne Johnson, are affirmed and their cases are remanded for the imposition of determinate sentences.
 

 CONVICTIONS AFFIRMED AND SENTENCES REMANDED.
 

 [1]
 

 . Witnesses' accounts vary regarding the number of perpetrators.
 

 [2]
 

 . The DNA testing resulted in a match of one in 19.2 trillion.
 

 [3]
 

 .The DNA testing resulted in a match of 1 in 169 trillion.